UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────
ROSE RAMEY LONG, a/k/a Roe Ramey
Littlejohn, individually and d/b/a ROSE LONG
FINE ART, a/k/a RRL Fine Art,

                Plaintiff,

-against-

DE FEIS O'CONNELL & ROSE, P.C.,

                Defendant.
───────────────────────────────────────────

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/26/2021_

20 Civ. 2530 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Rose Ramey Long, brings this attorney malpractice action against Defendant, De Feis O'Connell & Rose, P.C.[1] ("DeFeis O'Connell"), asserting claims for negligence, misrepresentation, gross negligence, and punitive damages. DeFeis O'Connell moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Def. Mot., ECF No. 39. Plaintiff moves to amend the first amended complaint (the "FAC") to add another cause of action for negligence. ECF Nos. 37–38. For the reasons stated below, DeFeis O'Connell's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND[2]

    In April 2014, Walter Maibaum and Carol Conn, doing business through their entities Degas Sculpture Project Ltd. and Modernism Fine Art, Inc. (the "Underlying Plaintiffs"), "attempted to sell" multiple works of art, including a bronze Degas sculpture titled The Little Dancer, Age Fourteen (the "Little Dancer"), to Lucien Brugnara, "through" Plaintiff Rose

---

[1] The original and amended complaints also named as defendants certain attorneys employed by DeFeis O'Connell, but Plaintiff voluntarily dismissed her claims against the individual lawyers. ECF No. 25.
[2] The following facts are taken from the complaint and accepted as true for the purposes of this motion. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Ramey Long, who does business as Rose Long Fine Art.  FAC ¶¶ 2, 8, 21, ECF No. 20.  The transaction was structured such that Brugnara would pay Plaintiff for the art, and Plaintiff would pay the Underlying Plaintiffs.  *Id.* ¶ 10; Testimony of Walter Maibaum at 177:6–9, ECF No. 20-1.  The Underlying Plaintiffs shipped the Little Dancer and other artwork from their warehouse in Manhattan to an address in San Francisco, California, owned by Brugnara.  *Id.* ¶ 9; Testimony of Walter Maibaum at 85:12–25, 89:18–20.

Although Brugnara had received the Little Dancer, he claimed he had not, and refused to pay Plaintiff.  FAC ¶¶ 14–17.  This theft led to Brugnara's May 19, 2015 conviction for mail and wire fraud in the Northern District of California.  *United States v. Brugnara*, No. 14 Cr. 306 (N.D. Cal.), ECF No. 631; Order Re Return of Art and Restitution at 2, ECF No. 20-2.

In June 2014, the Degas Sculpture Project Ltd. and Modernism Fine Art, Inc. sued Plaintiff in the Southern District of New York, seeking damages for the loss of the Little Dancer (the "Underlying Action").  FAC ¶ 21; Judgment in the Underlying Action at 1, ECF No. 20-3.  Plaintiff retained DeFeis O'Connell to represent her in that action.  FAC ¶ 22.  Although the answer filed by DeFeis O'Connell raised counterclaims against Maibaum and Conn personally, it did not join Brugnara.  *Id.* ¶ 24.  In 2018, after a trial, the jury awarded the Underlying Plaintiffs $396,000 for breach of contract by Plaintiff along with attorney's fees, and Plaintiff $50,000 for her counterclaims against Maibaum and Conn.  Judgment in the Underlying Action at 1; FAC ¶¶ 27–28.

Plaintiff brought this attorney malpractice action on March 24, 2020, alleging negligence, misrepresentation, gross negligence, and punitive damages claims.[3]

---

[3] On May 14, 2020, Plaintiff voluntarily dismissed Count 7 and the individual defendants.  ECF No. 25.

2

**DISCUSSION**

The Court shall first address DeFeis O'Connell's motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and then turn to Plaintiff's motion for leave to amend her complaint.

I. Choice of Law

Because this Court's subject matter jurisdiction is based on diversity between the parties, the Court must first determine the body of substantive law that applies to Plaintiff's claims. *See Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419 (2d Cir. 2001). "The state law to be applied is determined by the choice of law principles of the forum state." *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993). The jurisdictions involved in this case are New York, where this case was filed, the Underlying Action was litigated, and DeFeis O'Connell is domiciled; California, where the theft took place and the Little Dancer was shipped; and Tennessee, where Plaintiff is domiciled. Pl. Opp'n at 12–13, ECF No. 50; Def. Mem. at 2–3, ECF No. 41.

For tort claims, New York choice of law rules require an "interest analysis" to determine the choice of controlling law. *AllGood Ent., Inc. v. Dileo Ent. and Touring, Inc.*, 726 F. Supp. 2d 307, 315 (S.D.N.Y. 2010). Under this analysis, the law of the jurisdiction having the greatest interest in the litigation prevails. *Hidden Brook Air, Inc. v. Thabet Aviation Int'l, Inc.*, 241 F. Supp. 2d 246, 277 (S.D.N.Y. 2002).

New York law is clear that New York has the greatest interest in claims sounding in legal malpractice where "the attorney being sued is licensed in New York and the underlying trial took place in New York." *See Wolfson v. Moskowitz*, No. 08 Civ. 8796, 2009 WL 1515674, at *5 (S.D.N.Y. June 1, 2009); *Lasher v. Freeman*, No. 17 Civ. 6388, 2018 WL 4042039, at *2

3

(S.D.N.Y. Aug. 23, 2018) (applying New York law where defendant lawyers were members of the New York bar, the law firm was located in New York, and the underlying trial took place in New York), *motion for relief from judgment denied*, No. 17 Civ. 6388, 2019 WL 1769122 (S.D.N.Y. Apr. 9, 2019), *and appeal dismissed*, No. 18-2685 (L), 2019 WL 4391263 (2d Cir. Aug. 7, 2019). Here, DeFeis O'Connell is located in New York, its lawyers are barred in New York, and the underlying trial took place in New York. FAC ¶¶ 3–4, 21. New York, therefore, has the greatest interest, and New York law applies.

II. Motion to Dismiss

A. Legal Standard

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).[4]

---

[4] Citing Federal Rule of Civil Procedure 12(d), Plaintiff asks the Court to consider certain extrinsic evidence: the affidavit of Rose Ramey Long, ECF No. 51-1, and DeFeis O'Connell's Response to Plaintiff's First Request for Admissions, ECF No. 55, including the attached Letter Motions of Phillip C. Patterson filed in the Underlying Action, *id.* Pl. Opp'n at 12. Rule 12(d) allows the Court to convert a Rule 12(b)(6) motion into a summary judgment motion to consider matters outside the pleadings. Fed. R. Civ. P. 12(d). Courts have "considerable discretion" in choosing whether to convert a Rule 12(b)(6) motion. *Allen v. Chanel Inc.*, No. 12 Civ. 6758, 2013 WL 2413068, at *4 (S.D.N.Y. June 4, 2013). However, "the majority of the cases in this district only convert 12(b)(6) motions to ones for summary judgment where a party has explicitly asked for that relief in the alternative." *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 295 (S.D.N.Y. 2018) (collecting cases). Although Plaintiff suggests that the Court take notice of extrinsic evidence under Rule 12(d), she does not explicitly request that DeFeis O'Connell's motion be treated as one for summary judgment, or that her own response be treated as a cross-motion for summary judgment. Moreover, at the start of the briefing, discovery had been underway for only one month, and initial requests for production had yet to be served, which cautions against conversion. ECF No. 35; *cf. DeLuca v.*

B.     Legal Malpractice

Counts 3, 4, and 9 of the FAC allege that DeFeis O'Connell was negligent in its provision of legal services to Plaintiff. FAC ¶¶ 37–38, 46–49. "[L]egal malpractice, as opposed to ordinary negligence, is the appropriate cause of action to bring against an attorney who allegedly performed his/her professional duties negligently." *Amadasu v. Ngati*, No. 05 Civ. 2585, 2006 WL 842456, at *9 (E.D.N.Y. Mar. 27, 2006). Plaintiff appears to concede that these claims sound in legal malpractice. Pl. Opp'n at 19–26. The Court, therefore, treats these counts as claims for attorney malpractice, a "species" of negligence. *Amadasu*, 2006 WL 842456, at *9.

To state a claim for legal malpractice, Plaintiff must allege: "(1) attorney negligence; (2) which is the proximate cause of a loss; *and* (3) actual damages." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (emphasis in original).

Not all negligence is actionable. Rather, the attorney's negligence must have "[fallen] below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession" such that it is not merely an "error of judgment" or a "selection of one among several reasonable courses of action," but is in the mold of "ignorance of the rules of practice, failure to comply with conditions precedent to suit, or . . . neglect to prosecute or defend an action." *Id.* (internal quotation marks and citations omitted). "[S]econd-guessing of counsel's strategic judgment" does not rise to the level of a malpractice claim. *Estate of Re v. Kornstein Veisz & Wexler*, 958 F. Supp. 907, 923 (S.D.N.Y. 1997).

To demonstrate that this negligence is the proximate cause of damages, the plaintiff must plausibly allege that "but for" the malpractice, the plaintiff would have "received a more

---

*AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 61 (S.D.N.Y. 2010) (declining to convert a motion to dismiss to a summary judgment motion as "discovery has not yet commenced."). The Court, therefore, declines to consider the extrinsic evidence offered by Plaintiff.

advantageous result, would have prevailed in the underlying action, or would not have sustained some actual and ascertainable damage." *Prout v. Vladeck*, 316 F. Supp. 3d 784, 799 (S.D.N.Y. 2018). This in effect causes the trier of fact to conduct a "lawsuit within a lawsuit" to re-examine the events in the underlying case absent the alleged malpractice. *Id.*; *see also Pellegrino v. File*, 738 N.Y.S.2d 320, 323 (N.Y. App. Div. 2002) ("Even if counsel improperly advises the client, the advice is not the proximate cause of the harm if the client cannot demonstrate its own likelihood of success absent such advice."). A plaintiff's "speculative" or "conclusory" claims of damages cannot be the basis for this finding. *Kirk v. Heppt*, 532 F. Supp. 2d 586, 592 (S.D.N.Y. 2008).

Plaintiff alleges, in effect, four different bases for her legal malpractice claims.

### 1. Relevance of Brugnara's Actions

Plaintiff first alleges that in the Underlying Action, DeFeis O'Connell "negligently suppl[ied] false information" by telling Plaintiff that "the facts, circumstances, and testimony in the Luke Brugnara prosecution. . . were not material and not relevant to the defense" of the Underlying Action. FAC ¶ 38(1). Plaintiff does not, however, explain what effect informing her of the facts' materiality would have had on the Underlying Action. Although Plaintiff states that because she relied on the false information, she "sustained damage" through losing "her cause of action against . . . Brugnara" due to the statute of limitations, FAC ¶ 35, Plaintiff does not identify the lost "cause of action" (other than the intentional interference with contract claim discussed *infra*), or how her knowing about it would have created a likelihood of success in the Underlying Action. Nor does Plaintiff explain how losing independent claims against Brugnara would have altered the outcome of her defense. The Court concludes that Plaintiff has not plausibly alleged that but for DeFeis O'Connell failing to inform her of the relevance of

6

Brugnara's actions, she would have prevailed in the Underlying Action.  Therefore, Plaintiff fails to state a claim for attorney malpractice on this ground.

                2.        Failure to Join or Levy an Interference with Contract Claim

Plaintiff's next basis for negligence is that DeFeis O'Connell (1) failed to join Brugnara to the Underlying Action in order to raise the defense of intentional interference with contract against the Underlying Plaintiffs' breach of contract claim, and (2) allowed the statute of limitations to run on that same intentional interference with contract claim as a counterclaim against Brugnara.  FAC ¶¶ 30–32, 38, 48.  For each of these bases for negligence to succeed, Plaintiff must allege proximate cause—that if DeFeis O'Connell had used intentional interference with contract, either as a defense or a counterclaim, there is a "likelihood" that the jury in the Underlying Action would have sided with Plaintiff.  *Judd Burstein, P.C. v. Long*, No. 15 Civ. 5295, 2017 WL 3535004, at *6 (S.D.N.Y. Aug. 16, 2017), *aff'd* 797 F. App'x 585, 588 (2d Cir. 2019).

Plaintiff fails to allege facts sufficient to support that conclusion.  In New York, the elements for intentional interference with contract are "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom."[5]  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (internal quotation marks omitted).  Plaintiff alleges that Brugnara knew of the contract between Plaintiff and the Underlying Plaintiffs, that he intentionally procured the breach of that contract by refusing to return the Little

---

[5] The court in Underlying Action applied New York law.  Pl. Opp'n at 12–13.  Plaintiff does not allege in the FAC that a failure to challenge the choice of law in that action was negligent.  In considering the allegations in the FAC, therefore, the Court applies New York law.

Dancer or pay Plaintiff for it, and as a result of that procurement of breach, Plaintiff was damaged. FAC ¶ 47. Plaintiff fails to allege, however, that Brugnara procured a *third-party's* breach. Rather, she appears to claim that Brugnara procured her own breach of the contract with the Underlying Plaintiffs. *Id.* ¶ 48 (asserting that the intentional interference with contract claim would have been a defense to the breach of contract claims against her). This is insufficient to state a claim for interference with contract. *Com. Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14 Civ. 7483, 2017 WL 3432073, at *16 (E.D.N.Y. Aug. 8, 2017) (dismissing a tortious interference with contract claim because the plaintiff did not allege "that the third parties, as opposed to [the p]laintiff, breached those contracts").[6] The Court concludes that Plaintiff has not plausibly alleged that had DeFeis O'Connell asserted an interference with contract claim, the jury would have favored Plaintiff. Plaintiff, therefore, fails to state a claim for legal malpractice based on DeFeis O'Connell's failure to join Brugnara and bring an intentional interference with contract claim against him. *See Judd Burstein, P.C.*, 797 F. App'x at 588.

        3.     Failure to Request a Continuance

Plaintiff next alleges that DeFeis O'Connell failed to ask for a continuance of the trial date on the ground that Plaintiff's injury compromised her ability to testify, thus

---

[6] Plaintiff alleges that Brugnara would have been collaterally estopped from disputing the tortious interference with contract claim due his conviction having "established his liability to Plaintiff for [i]ntentional [i]nterference with [c]ontract," citing *Samhammer v. Home Mutual Insurance Co. of Binghamton*, 507 N.Y.S.2d 499 (1986). FAC ¶ 49. In *Samhammer*, however, the court held that a plaintiff was collaterally estopped from contesting the insurance company's affirmative defense that it did not have to pay an insurance policy because defendant had burned down his house in violation of the policy, as there was an administrative determination that the plaintiff *had* burned down the house. *Samhammer*, 507 N.Y.S.2d 499. The court observed that "[the] findings, if given conclusive effect, would clearly exonerate defendants from any liability to plaintiffs under the terms of the insurance policy." *Id.* at 501. Here, by contrast, Brugnara's conviction may have determined that he had not paid Plaintiff and had stolen the Little Dancer, but that would not necessarily prove that he had procured the breach or the other elements of the intentional interference with contract claim. *Taboola, Inc. v. Ezoic Inc.*, No. 17 Civ. 9909, 2020 WL 1900496, at *7 (S.D.N.Y. Apr. 17, 2020) (stating that in a tortious interference with contract claim, "the plaintiff must assert. . . that the defendant's actions were the 'but for' cause of the alleged breach—in other words, that there would not have been a breach but for the activities of the defendant."). *Samhammer*, therefore, does not save Plaintiff's claim.

"disadvantag[ing]" her in front of the jury. FAC ¶¶ 29; 38(4). Plaintiff does not, however, explain how her testimony would have differed were she not injured, or how such testimony would have affected the outcome of the Underlying Action. Therefore, Plaintiff has not alleged a plausible "likelihood of success" should the court have granted an adjournment, *Pellegrino*, 738 N.Y.S.2d at 323, and has failed to state a claim for legal malpractice based upon DeFeis O'Connell's failure to request a continuance.

### 4. Failure to Investigate

Finally, Plaintiff alleges that DeFeis O'Connell failed to "fully investigate the facts and the witnesses to the events around the loss of" the Little Dancer. FAC ¶ 38(5). Plaintiff faults DeFeis O'Connell for not (1) exploring during discovery whether Maibaum knew that Brugnara's residence was a residence and not a museum, and (2) cross-examining Maibaum at trial on his inconsistent statements regarding the ownership of the Little Dancer. *Id.* ¶¶ 33–34. But Plaintiff does not explain how not revealing Maibaum's knowledge that Brugnara's residence was not a museum, or the inconsistencies in his representations regarding ownership of the Little Dancer, had a "tight causal relationship" with the outcome of the Underlying Action. *Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP*, 643 F. Supp. 2d 317, 322 (S.D.N.Y. 2008). Plaintiff, therefore, has failed to allege proximate cause, and has not made out a legal malpractice claim based on the failure to investigate.

Because Plaintiff has failed to demonstrate that any alleged act of negligence by DeFeis O'Connell proximately caused a change in the outcome of the Underlying Action, she has failed to state a claim for legal malpractice, and Counts 3, 4, and 9 are DISMISSED.

### C. Misrepresentation, Gross Negligence, and Punitive Damages

Plaintiff's claims for misrepresentation, gross negligence, and punitive damages also fail.

9

Counts 1 and 2, Plaintiff's misrepresentation claims, merely duplicate her legal malpractice claims. A claim against an attorney is duplicative of a malpractice claim where it is "premised on the same facts and seeking the same relief." *Amusement Indus., Inc. v. Buchanan Ingersoll & Rooney, P.C.*, No. 11 Civ. 4416, 2012 WL 1193353, at *6–7 (S.D.N.Y. Apr. 10, 2012). In the case of intentional misrepresentation particularly, a claim is non-duplicative where it is premised on a misrepresentation "more egregious than mere concealment or failure to disclose one's own malpractice," which has caused "additional damages, separate and distinct from those generated by the alleged malpractice." *Mackley v. Sullivan & Liapakis, P.C.*, No. 98 Civ. 4860, 1999 WL 287362, at *2 (S.D.N.Y. May 7, 1999); *Esposito v. Chestnut*, No. 18 Civ. 11245, 2020 WL 2520636, at *9 (S.D.N.Y. May 16, 2020).

Plaintiff alleges both negligent misrepresentation, on the ground that DeFeis O'Connell failed to tell Plaintiff that Brugnara's actions in San Francisco were relevant to her defense in the Underlying Action, and intentional misrepresentation, due to the firm's concealment of Plaintiff's cause of action against Brugnara. FAC ¶¶ 35–36. Plaintiff states that because of the misrepresentations, she lost her claim against Brugnara because DeFeis O'Connell allowed the statute of limitations to expire. *Id.* These same allegations underlie Plaintiff's attorney malpractice claims and Plaintiff pleads no additional damages for misrepresentation. *Id.* ¶ 38. Therefore, both of Plaintiff's misrepresentation claims are duplicative. *See Amusement Indus.*, 2012 WL 1193353, at *8 (dismissing a negligent misrepresentation claim as duplicative of legal malpractice claim); *Manolis v. Brecher*, No. 11 Civ. 2750, 2012 WL 527450, at *5 (S.D.N.Y. Feb. 16, 2012) (dismissing intentional misrepresentation claim as duplicative).

Plaintiff's gross negligence claims also fail. Count 5 alleges gross negligence because DeFeis O'Connell "knew or should have known" that Brugnara should be joined in the

Underlying Action, and that if it did not join him, Plaintiff's claims against him would be barred by the statute of limitations. FAC ¶ 39. The count cites the other general allegations in its support—the same facts that form the basis of Plaintiff's attorney malpractice claims—and Plaintiff does not seek additional damages. Count 5 is, therefore, duplicative of the legal malpractice claim. *See Amadasu*, 2006 WL 842456, at *9 (dismissing gross negligence claim as duplicative of legal malpractice claim).

In Count 6, Plaintiff alleges that DeFeis O'Connell was grossly negligent because its attorneys violated New York Rule of Professional Conduct 1.0(j). Specifically, Plaintiff alleges that Plaintiff did not give DeFeis O'Connell informed consent because the firm failed to give Plaintiff full information about her claims. FAC ¶ 40. However, violations of the Rules of Professional Conduct do not create a private cause of action. *Anderson v. Greene*, No. 14 Civ. 10249, 2016 WL 4367960, at *30 (S.D.N.Y. Aug. 10, 2016), *aff'd*, 774 F. App'x 694 (2d Cir. 2019); *Jiau v. Hendon*, No. 12 Civ. 7335, 2014 WL 559004, at *6 (S.D.N.Y. Feb. 12, 2014) ("The ethical rules governing lawyers have their own means of enforcement; a violation of such a rule does not, without more, give a client or former client a malpractice claim."). Count 6, therefore, fails to state a cause of action based on the violation of the Rules of Professional Conduct.

Finally, Plaintiff alleges in Count 8 that she is entitled to punitive damages based on DeFeis O'Connell's intentional acts. FAC ¶ 43. Under New York law, punitive damages do not create an independent cause of action. *Green v. Covidien LP*, No. 18 Civ. 2939, 2019 WL 4142480, at *10 (S.D.N.Y. Aug. 30, 2019). Count 8, therefore, also fails.

For the reasons stated above, Plaintiff has failed to allege facts supporting a claim for relief. Accordingly, DeFeis O'Connell's motion to dismiss is GRANTED.

III.     Leave to Amend the First Amended Complaint

   A.     Legal Standard

A motion to amend is generally governed by Rule 15 of the Federal Rules of Civil Procedure, which provides that leave to amend a pleading should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this liberal standard, a motion for leave to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009). The futility of a proposed amendment is evaluated on a motion to dismiss standard. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

   B.     Analysis

In the proposed second amended complaint ("the SAC"), Plaintiff seeks to add another count of legal malpractice arising from DeFeis O'Connell's failure to raise the affirmative defense of impossibility in the Underlying Action.

      1.     Choice of Law

Plaintiff argues that DeFeis O'Connell was negligent in failing to argue that California law, rather than New York law, controlled the Underlying Action, on the grounds that the contract at issue in the Underlying Action was to be performed in California, and that Brugnara caused the breach in California. SAC ¶ 53; Pl. Opp'n at 12–13. Plaintiff is incorrect. In determining the choice of law for a contract claim, New York courts consider "a spectrum of

significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Tarzy v. Dwyer*, No. 18 Civ. 1456, 2019 WL 132280, at *7 (S.D.N.Y. Jan. 8, 2019) (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997)). The most heavily weighted factors are the places of contracting and performance. *TCA Television Corp. v. McCollum*, 839 F.3d 168, 188 (2d Cir. 2016).

The pleadings and the trial record indicate that the location of the "subject matter"—the artwork—at the time of contracting was a Manhattan warehouse where Plaintiff and the Underlying Plaintiffs store art. Testimony of Walter Maibaum, 85:12–25; 89:18–20. Plaintiff makes no allegations regarding the place where the contract was negotiated and executed, nor the domicile of the Underlying Plaintiffs. Without such key facts, Plaintiff's claims regarding the place of performance (California) and her own domicile (Tennessee), coupled with Maibaum's testimony regarding the location of the subject matter (New York), do not support the conclusion that it was unreasonable for DeFeis O'Connell not to argue that California law applied to the Underlying Action. The Court cannot, therefore, find DeFeis O'Connell's choice of law was negligent based on the allegations in the FAC and SAC. This aspect of the amendment, therefore, would be futile, and the Court will apply New York law of impossibility of performance.

2. Impossibility of Performance

Plaintiff's proposed Count 10 alleges legal malpractice based on impossibility. In New York, the affirmative defense of impossibility of performance is available when the defendant shows that the performance of a contract was "objectively impossible," and the impossibility was provoked by "an unanticipated event that could not have been foreseen or guarded against in the

13

contract." *Kel Kim Corp. v. Cent. Mkts., Inc*., 70 N.Y.2d 900, 902 (1987). It arises where "(1) the contract does not expressly allocate the risk of the event's occurrence to either party, and (2) to discharge the contractual duties . . . of the party rendered incapable of performing would comport with the customary risk allocation." *Bank of N.Y. v. Tri Polyta Fin. B.V*., No. 01 Civ. 9104, 2003 WL 1960587, at *4 (S.D.N.Y. Apr. 25, 2003).

The Court rejects Plaintiff's argument that DeFeis O'Connell should have asserted the impossibility defense because Brugnara's refusal to pay Plaintiff for the Little Dancer amounted to an unforeseeable event that made it impossible for Plaintiff to perform the contract. SAC ¶ 50.

The Court concludes that it was reasonable for DeFeis O'Connell to determine that impossibility of performance was not a viable defense. Impossibility is generally invoked when an event could not have been foreseen, such as destruction of the means of performance by "an act of God, *vis major,* or by law." *Kolodin v. Valenti*, 979 N.Y.S.2d 587, 589 (N.Y. App. Div. 2014) (quoting *407 E. 61st Garage v. Savoy Fifth Ave. Corp.,* 23 N.Y.2d 275, 281 (1968)). Where an event could have been foreseen or "[g]uarded against in the contract," it is not impossible. *Kolodin*, 979 N.Y.S.2d 587. It is not unreasonable to surmise that a customer's failure to pay a middleman is not tantamount to an act of God or an intervening act of law, but is rather a foreseeable risk that could have been factored into the contract. *See Nat'l Enters. Inc. v. New Eng. Dev. II, Inc*., 198 F.3d 234 (2d Cir. 1999) (holding there was no impossibility where the breach of a loan contract "resulted from the defendants' inability to make payments because the investment they made with the loan proceeds did not return sufficient funds for them to do so"); *407 E. 61st Garage, Inc*, 23 N.Y.2d at 281 ("[W]here impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent

of insolvency or bankruptcy, performance of a contract is not excused."). In addition, sales contracts regularly allocate risk should the object being sold be lost, indicating such risk is foreseeable. *See, e.g.*, U.C.C. § 2-509.

DeFeis O'Connell's determination that the defense of impossibility was not available to Plaintiff does not reflect lawyering "below the ordinary and reasonable skill and knowledge commonly possessed by" an attorney, but rather "one among several reasonable courses of action." *Achtman*, 464 F.3d at 337.

Accordingly, Plaintiff's motion for leave to amend is DENIED.

## CONCLUSION

For the foregoing reasons, DeFeis O'Connell's motion to dismiss is GRANTED, and Plaintiff's motion for leave to amend is DENIED.

The Clerk of Court is directed to terminate the motions at ECF Nos. 36 and 39, and to close the case.

SO ORDERED.

Dated: January 26, 2021
      New York, New York

_____
ANALISA TORRES
United States District Judge